GALVESTON, H. & S. A. RY. CO. et al. v. BLOCKER et al.

(Court of Civil Appeals of Texas. San Antonio. March 12, 1913. Rehearing Denied April 10, 1913.)

1. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—ACTIONS FOR DELAY—EVIDENCE.

In an action by shippers of live stock for damages for negligent delay, evidence on the issue of the undue delay of the defendant carrier *held* sufficient to go to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

2. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—ACTIONS FOR DELAY—EVIDENCE.

In an action against a carrier for damages for delay in a shipment of live stock, evidence on the question of damages to the stock *held* sufficient to carry the case to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

**3. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR.**

In an action against a carrier for damages caused by delay in the shipment of cattle, the admission of testimony as to the customary time to keep cattle in the pens for food and water is harmless, where the time stated was the exact time fixed by statute.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**4. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR.**

In an action against a railroad company for damages for delay in a shipment of cattle which were loaded at 1 o'clock in the afternoon, the admission of a memorandum showing that the train did not start until 2:40 p. m. was harmless, in the absence of evidence by the carrier to show that this time was not lost by its fault, for if the shipment was started at 1 o'clock it was longer on the road.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**5. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR.**

The admission of improper evidence is harmless, where evidence of the same nature was previously admitted without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**6. CARRIERS (§ 229*) — CARRIAGE OF LIVE STOCK—DAMAGES FOR DELAY—VERDICT.**

In an action against a railroad company for damages caused by delay in a shipment of live stock, the verdict cannot be considered so grossly excessive as to reveal passion or prejudice, where the jury merely allowed the shipper the average difference between the market price of the cattle on the day they should have arrived and on the day they did; no allowance being made for shrinkage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

**7. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK — DAMAGES FOR DELAY — INSTRUCTIONS.**

In an action against a railroad company for damages for delay in the shipment of stock, which the shipper claimed would otherwise have reached the market a day earlier, a charge that, if the defendants had transported the cattle within a reasonable time, they would have reached the destination after the close of the market hours and would have been held over until the next day, the day on which they actually arrived, before being sold, then plaintiffs cannot recover, while awkwardly stated, places no extra burden on the carrier, but correctly presents the law.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

Appeal from District Court, Bexar County.

Action by J. R. Blocker and another against the Galveston, Harrisburg & San Antonio Railway Company and others. From a judgment for plaintiffs, defendants appeal. Affirmed as to the named defendant, and reversed as to others.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden, and W. F. Ezell, all of San Antonio, for appellants. C. C. Clamp and S. S. Searcy, both of San Antonio, for appellees.

TALIAFERRO, J. The statement of the case, as set out in the brief of appellant Galveston, Harrisbury & San Antonio Railway Company, being approved by the appellees and other appellants, we will adopt same: "This suit was instituted by W. H. Ford and J. R. Blocker, in the district court of Bexar county, Tex., Forty-Fifth judicial district, on November 7, 1908, against the Galveston, Harrisburg & San Antonio Railway Company, Texas & New Orleans Railroad Company, Louisiana Western Railroad Company, Morgan's Louisiana & Texas Railroad & Steamship Company, and Illinois Central Railway Company, to recover damages alleged to have been sustained to a shipment of cattle on June 14, 1908, from Eagle Pass, Tex., over the lines named, to East St. Louis, Ill., it being alleged that the cattle were not transported within a reasonable time, and that the market declined, and that by reason thereof they were damaged in the sum of $3,124.12, for which amount they pray judgment. Appellants answered by general denial, and pleaded specially that the cattle were transported under and by virtue of a written contract, under the terms of which it was agreed that said stock were not to be transported within any specified time, or delivered at destination at any particular hour or in season for any particular market; and that the appellees were to load, unload, and reload said stock at their own risk for feed and water, and attend to the same at feeding or transfer points; that it was further provided in said contract that each of the appellants should only be liable for such loss or damage as occurred upon their respective lines of road; that the stock were transported with reasonable diligence and dispatch; and that if the stock were unloaded, it was for the purpose of feed, water, and rest, as required by law; and that it was necessary, under the circumstances existing at the time of said shipment, that said stock should be unloaded, fed, watered, and rested at the times and places they were so unloaded. Appellants also denied the existence of any partnership under oath. The cause was tried on February 7, 1912, by the court and a jury. The court peremptorily instructed a verdict in favor of the Illinois Central Railway Company, and submitted the case as to appellants (the other defendants therein), and the trial resulted in a verdict and judgment in favor of appellees, Ford and Blocker, for the sum of $1,032.96, apportioned equally among appellants."

The appellant Louisiana Western Railroad Company, by its third assignment, and the Morgan's Louisiana & Texas Railroad & Steamship Company and Texas & New Orleans Railroad Company, by their third assignment of error, contend that the trial court erred in its main charge, wherein it submitted to the jury the issue of whether or not they transported appellees' cattle

within a reasonable time, because there was no evidence authorizing the submission of such an issue to the jury. These assignments are well taken. The only evidence in the record with reference to the usual and customary time for the shipment of cattle over these lines is that of W. G. Van Vleck and Thornwell Fay to the effect that 15 miles per hour was the usual and proper speed. There is no evidence to put that question in issue, as the evidence of Blocker and Duncan refers only to the Galveston, Harrisburg & San Antonio Railway Company's line. The court should not, therefore, have submitted this question to the jury, but should have instructed a verdict in favor of those lines of road.

[1] In its first, second, and fourth assignments of error, the appellant Galveston, Harrisburg & San Antonio Railway Company attacks the verdict and judgment on the ground that they are unsupported by the evidence. A very careful analysis of the evidence reveals the following condition: The cattle were loaded at Eagle Pass as early as 1 o'clock p. m. on Sunday, June 14, 1908. The exact time of their departure is in dispute; but we will presume that the train started when the loading was done, at 1 o'clock, because that construction is as favorable as any other to the appellant, since, if it did not start at that time, the duty was incumbent upon it to explain the delay between that time and 2:40 p. m. The train arrived in San Antonio at 2 a. m. on Monday, the 15th, having been on the road 13 hours. There is evidence that this run, a distance of 168 miles, should have been made at 20 miles per hour, which would have been 8 hours and 24 minutes, or 4 hours and 36 minutes faster than the time actually made. There was a 30 minutes' delay in San Antonio, and the train arrived in Houston at 12:30 o'clock p. m. the same day, a distance of 209 miles. This shows an average of a fraction more than 20. miles per hour on the Galveston, Harrisburg & San Antonio from San Antonio to Houston, not including a necessary delay of 30 minutes at Glidden, the end of a division. At Houston the cattle were unloaded, fed, watered, and rested. It was shown that the usual and sufficient time to unload and reload such a train of cattle is 4 hours and that the proper time to allow them to remain in the pens is 5 hours, or a total of 9 hours. The evidence is such as to justify the jury in believing that these cattle were kept there 14 hours, making a loss of 5 hours in this stop, which added to the loss in the run from Eagle Pass to San Antonio shows a total loss, up to the time the train left Houston, of 9 hours and 36 minutes. The train arrived at Algiers at 12:30 a. m., Tuesday, the 17th, a run of 362 miles in 24 hours, and the cattle were again unloaded to be fed and watered. Appellant earnestly insists that this stop was made necessary by failure of appellees to make written request to have the cattle retained in the cars more than the statutory 28 hours. But the view we take of the case renders this point immaterial. There was evidence from which a jury could have reached either one of two conclusions: That the usual and proper time for trains to make on the Galveston, Harrisburg & San Antonio Railway was 15 miles per hour, in which case they must have found with appellant, or that 20 miles per hour was the time the train should have reasonably made, and 9 hours the proper time for feeding and rest, in which event they must have found that there was a delay of 9 hours and 36 minutes in the run. This was wholly a question for the jury, and the court did not err in submitting the issue to them. This case does not come within the rule laid down in the case of Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. In that case the court held that, where the evidence does no more than raise a surmise or suspicion of the fact sought to be proved, the court should take the question from the jury. But in the present case the evidence, though not abundant, is sharply conflicting, and it was not the province of the court to pass upon its sufficiency.

[2] The fifth assignment of error, by appellant Galveston, Harrisburg & San Antonio Railway Company, asserts that the undisputed evidence shows that, as no request was made by the shipper for the confinement of the cattle in the cars for longer periods than the statutory 28 hours, two stops were necessary en route to feed and water, and therefore it would not have been possible to have reached the yards at East St. Louis for the market of the 18th of June. But this contention is not supported by the undisputed evidence. It has been seen that there was evidence that the proper and usual speed for such shipments, on the line of the Galveston, Harrisburg & San Antonio Railway, was 20 miles per hour, and that 9 hours was a proper time to be consumed in feeding and watering the stock. The jury might have taken that evidence as their guide, and if they did so it is ample to show that the cattle could have reached East St. Louis in time for the market on that day, after allowing a proper time to be consumed in both the stops made to feed and water. From the evidence it appears that the Illinois Central Railway carried the cattle from New Orleans to East St. Louis, a distance of 707 miles, in something less than 34 hours, or about 21½ miles per hour. If appellants had made the run between Eagle Pass and San Antonio at the rate of 20 miles per hour, and had not suffered the delay of 5 hours in the Houston yards, the cattle would have arrived at Algiers, notwithstanding the stops to feed and water, and at the end of the division, 9 hours and 36 minutes earlier, thereby enabling them to be delivered to the Illinois Central Railway Company at 12:30 a. m. on the 17th, instead of 10:30 a. m. on the 17th,

making it possible for the shipment to have reached East St. Louis at 11:20 a. m. instead of 9:20 p. m. on the 18th of June. The evidence shows that the market continued from about 8 a. m. to about 3 p. m., and that cattle are frequently sold as they are unloaded from the train. This evidence may not be satisfying to the mind; but it must be remembered that it is not for this court to be satisfied, but for the jury, for us it is only to say whether or not there was evidence upon which the trial court could properly submit the case to the jury and upon which rational minds could differ. We cannot say, as a matter of law, that such a case does not exist here, and the assignments are overruled.

The same can be said of the sixth and seventh assignments of error of appellant Galveston, Harrisburg & San Antonio Railway Company, and they are overruled.

[3] Appellants complain that witness J. R. Blocker was permitted to testify that the customary time to keep cattle in pens for feeding and watering was five hours, because this answer was a conclusion and stated a matter regulated by law. If this was error, it was immaterial, because the witness stated the exact minimum time fixed by the statute. The eighth assignment is therefore overruled.

[4] By its ninth assignment of error appellant Galveston, Harrisburg & San Antonio Railway Company complains that appellee was allowed to introduce as evidence a pencil memorandum on its shipping contract as follows: "Out 2–242, Erkel, 6–14, 2:40 P. M." The object of the evidence could only have been to show when the train started and the name of the conductor in charge. If this was error, appellants cannot complain because it was shown that the cattle were loaded before 1 p. m. on that day. If they started at 1 p. m., they were 1 hour and 40 minutes longer on the road to San Antonio. If they started at 2:40, the time was spent at Eagle Pass instead of on the road. In the absence of evidence from appellant to show that this time was lost without the fault of appellants, which no effort was made to do, it cannot complain of its effect.

[5] Appellant Galveston, Harrisburg & San Antonio Railway Company's tenth and eleventh assignments of error must be overruled. They object to the introduction of C. K. Dunlap as to what was good time to be made over the Galveston, Harrisburg & San Antonio Railway Company's line. This evidence was cumulative. The testimony of J. R. Blocker that the fair and usual time over the Galveston, Harrisburg & San Antonio Railway was 20 miles per hour was admitted without objection, and, if it was error to admit the question and answer to the same effect in the deposition of Dunlap, the error was harmless. Pullman P. C. Co. v. Smith, 79 Tex. 468, 14 S. W. 993, 13 L. R. A. 215, 23 Am. St. Rep. 356; Wallis & Co. v. Schneider, 79 Tex. 481, 15 S. W. 492; Railway Co. v. Garteiser, 9 Tex. Civ. App. 463, 29 S. W. 939.

[6] Appellants contend that the verdict and judgment are so grossly excessive as to reveal passion or prejudice of the jury. We do not think so. If appellees were entitled to recover at all, their damages could hardly be less. The only proof of market price is that the market was from 30 to 50 cents per hundredweight less on the 19th of June than it was on the 18th. The cattle weighed, at East St. Louis, 258,240 pounds. The jury found damages in the sum of $1,032.96, which shows that they calculated the damage at 40 cents per hundredweight, the mean damage between the two extremes of the evidence. No allowance was made for shrinkage. Under the only evidence upon the question of damages, the jury could have found no other verdict unless they found for the defendant or fixed the damages at 30 or 50 cents per hundred.

[7] Appellant's third assignment does not present an error. The charge complained of is as follows: "You are further charged that if you find that if said defendants, and each of them, had transported said cattle within a reasonable time, should you find they were not, said cattle would have reached East St. Louis on the 18th day of June, 1908, after the close of market hours, and would have been held over until next day before being sold, then you are instructed plaintiffs cannot recover, and your verdict will be for the defendants."

The charge is unhappily worded, but the only meaning which could have reasonably been given to it by the jury was that, if they believed that, even though the defendants had transported the cattle with reasonable dispatch, they would nevertheless have arrived too late for the market of the 18th, and therefore necessarily have been kept over until the following day, they should find for defendants. This placed no extra burden upon the appellants, but properly, though awkwardly, presented the law to the jury. The assignment is overruled. The judgment in favor of the Illinois Central Railway Company is affirmed.

For the errors above indicated, the judgment of the lower court otherwise is reversed, and judgment here rendered that appellees take nothing by their suit against the defendants Louisiana Western Railroad Company, the Morgan's Louisiana & Texas Railroad & Steamship Company, and the Texas & New Orleans Railroad Company, and that the appellees recover from the Galveston, Harrisburg & San Antonio Railway Company the full sum of $1,032.96, with interest at 6 per cent. from date of the judgment of the lower court, together with costs incurred by reason of their suit against the Galveston, Harrisburg & San Antonio Railway Company.